UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

IRIS HERSKOWITZ BAEZ, and
NICKHOULAS VITALE,
   a/k/a "Nicky,"

        Defendants.

- - - - - - - - - - - - - - - - - - - x

**07 CRIM.  280**

INDICTMENT

07 Cr. _____

JUDGE KARAS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 11 2006

COUNT ONE

(<u>Conspiracy to Commit Theft or Bribery Concerning Programs
Receiving Federal Funds</u>)

    The Grand Jury charges:

<u>Co-Op City</u>

    1.  Co-Op City is a New York State Mitchell-Lama housing cooperative located in the Bronx, New York. As a Mitchell-Lama development, Co-Op City was established for the purpose of providing affordable housing for middle-income residents. To effectuate that purpose, Mitchell-Lama developments such as Co-Op City charge rents (or "maintenance") that are considerably lower than the rents that qualified residents would have to pay for comparable housing on the open market.

    2.  Co-Op City is home to at least approximately 50,000 residents. It consists of 15,372 residential units in 35 high-rise buildings and 7 townhouse clusters.

3. Co-Op City is legally known as "Riverbay Corporation." Since in or about 1999, Co-Op City has been run by two primary entities: the Riverbay Board of Directors (the "Board") and an outside management company (the "Management Company"). The Board is comprised of 15 residents of Co-Op City who stand for election on a rotating basis every few years.

4. New York State imposes certain regulations on how Co-Op City may spend money on capital improvements at Co-Op City. For example, New York State regulations require that for any job in excess of $50,000, Co-Op City must put the work out for bid, memorialize the agreement with the bid winner in a formal contract, and subject the contract to approval by the New York State Division of Housing and Community Renewal ("DHCR"), which regulates Co-Op City.

## Federal Funding of Co-Op City

5. The New York City Housing Authority ("NYCHA") is a New York City agency responsible for, among other things, supervising a Section 8 rental assistance program (the "Section 8 Program"). The Section 8 Program is regulated and fully funded by the United States Department of Housing and Urban Development ("HUD"). As part of the Section 8 Program, HUD pays subsidies, typically in the form of vouchers, for people to live in private housing.

6. During the calendar year 2000, approximately

$976,000 worth of federal funding from HUD was awarded to Co-Op City. During the calendar year 2001, approximately $834,000 worth of federal funding from HUD was awarded to Co-Op City. During the calendar year 2002, approximately $738,000 worth of federal funding from HUD was awarded to Co-Op City.

       7.    Neither HUD nor NYCHA place any restriction on how Co-Op City can spend the federal subsidies. Accordingly, during all times relevant to this Indictment, Co-Op City was permitted to use the federal funds for capital improvements such as renovations to, and painting of, apartment units at Co-Op City.

### The Co-Conspirators

       8.    At all times relevant to this Indictment, IRIS HERSKOWITZ BAEZ, the defendant, was a member of the Board. Between 2000 and 2003, BAEZ served as President, and later as Secretary, of the Board. As a member of the Board, BAEZ owed Co-Op City a duty, among others, to: (A) refrain from receiving illegal payments or other gifts designed to (i) improperly affect the performance of official duties, or (ii) coax favorable official action or inaction; (B) refrain from using her office or knowledge gained from her official functions for the private gain of either herself or any third parties; and (C) disclose conflicts of interest and other material information in matters over which she had authority and discretion that resulted in her direct or indirect personal gain.

9. At all times relevant to this Indictment, CC-1, another co-conspirator not named as a defendant herein, was an employee of Co-Op City.

10. From at least 1999 until in or about July 2000, NICKHOULAS VITALE, a/k/a "Nicky," the defendant, was employed as a painter in the Restoration Department at Co-Op City. Beginning in or about October 2000, VITALE was employed as a painter by Stadium Interior Painting, Inc. ("Stadium Painting").

Means and Methods of the Conspiracy

11. CC-2, another co-conspirator not named as a defendant herein, was the president and owner of Stadium Painting, which was based in New York, New York. Between 2000 and 2002, CC-2 and Stadium Painting sought to do business as a vendor with Co-Op City.

12. In or about Spring 2000, the Management Company decided to retain an outside contractor to perform the painting work at Co-Op City. On or about June 27, 2000, Co-Op City issued an invitation to private painting contractors to bid for the painting work at Co-Op City.

13. IRIS HERSKOWITZ BAEZ and NICKHOULAS VITALE, a/k/a "Nicky," the defendants, CC-1, and other co-conspirators not named as defendants herein, subsequently agreed that CC-2 would submit on behalf of Stadium Painting a bid for the painting work at Co-Op City. In exchange for help steering the painting work

4

to Stadium Painting, CC-2 agreed to pay kickbacks to BAEZ, VITALE, CC-1, and other co-conspirators. Based on this corrupt arrangement, Stadium Painting was awarded the Co-Op City painting work in or about September 2000.

14. At the suggestion of CC-1, the Co-Op painting work was awarded on a probationary basis, the effect of which was that: (1) Co-Op City did not need to enter into a formal contract with Stadium Painting; and (2) Co-Op City did not need to submit its decision to award Stadium Painting the painting work to DHCR for its review.

15. During the course of the conspiracy, from at least in or about August 2000, until at least in or about July 2002, Co-Op City paid Stadium Painting approximately $3.5 million for painting work that Stadium Painting performed at Co-Op City. CC-2 paid approximately $100,000 in kickbacks to IRIS HERSKOWITZ BAEZ and NICKHOULAS VITALE, a/k/a "Nicky," the defendants, CC-1, and other co-conspirators not named as defendants herein, to carry out the conspiracy. BAEZ, VITALE, and CC-1 received and kept for their own a portion of the kickback money.

Statutory Allegation

16. From at least in or about August 2000, up to and including at least in or about October 2004, in the Southern District of New York and elsewhere, IRIS HERSKOWITZ BAEZ and NICKHOULAS VITALE, a/k/a "Nicky," the defendants, and others

known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Section 666(a) of Title 18, United States Code.

17. It was a part and an object of the conspiracy that IRIS HERSKOWITZ BAEZ and NICKHOULAS VITALE, a/k/a "Nicky," the defendants, and others known and unknown, one of whom was an agent of an organization that received in a one-year period benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, Co-Op City, unlawfully, willfully, and knowingly would and did corruptly solicit and demand for the benefit of a person, and accept and agree to accept, a thing of value, to wit, cash kickback payments, from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions involving a thing of value of $5,000 and more, to wit, the Co-Op City painting work and the cash kickback payments, in violation of Title 18, United States Code, Section 666.

## OVERT ACTS

18. In furtherance of the charged conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. In or about July 2000, CC-2 submitted a bid on behalf of Stadium Painting for the painting work at Co-Op City.

b. On or about September 11, 2000, CC-1 recommended that Stadium Painting be hired for the painting work at Co-Op City.

c. Between in or about September 2000 until in or about April 2002, NICKHOULAS VITALE, a/k/a "Nicky," the defendant, regularly delivered kickback payments from CC-2 to CC-1 and another co-conspirator not named as a defendant herein ("CC-3").

d. Between in or about September 2000 until in or about April 2002, IRIS HERSKOWITZ BAEZ, the defendant, and CC-1 met regularly in BAEZ's home to divide up the kickback payments from CC-2.

e. On or about April 17, 2002, CC-2 provided to VITALE for delivery a kickback payment in connection with the Co-Op City painting work.

f. Between in or about 2002, and in or about 2004, BAEZ stored cash in CC-3's home in order to help BAEZ avoid detection by law enforcement authorities.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(<u>Theft or Bribery Concerning Programs Receiving Federal Funds</u>)

The Grand Jury further charges:

19. Paragraphs One through Fifteen and Eighteen of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

20. From at least in or about August 2000, up to and including at least in or about October 2004, in the Southern District of New York and elsewhere, IRIS HERSKOWITZ BAEZ and NICKHOULAS VITALE, a/k/a "Nicky," the defendants, being agents of an organization that received in a one year period benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, Co-Op City, unlawfully, willfully, and knowingly did corruptly solicit and demand for the benefit of a person, and accept and agree to accept, a thing of value, to wit, cash kickback payments, from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions involving a thing of value of $5,000 and more, to wit, the Co-Op City painting work and cash kickback payments.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

COUNT THREE

(<u>Conspiracy to Commit Theft or Bribery Concerning Programs Receiving Federal Funds</u>)

The Grand Jury further charges:

21. Paragraphs One through Fifteen and Eighteen of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

22. From at least in or about August 2000, up to and including at least in or about July 2002, in the Southern District of New York and elsewhere, NICKHOULAS VITALE, a/k/a "Nicky," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Section 666(a)(2) of Title 18, United States Code.

23. It was a part and an object of the conspiracy that NICKHOULAS VITALE, a/k/a "Nicky," the defendant, and others known and unknown, unlawfully, willfully and knowingly would and did corruptly give, offer, and agree to give a thing of value, to wit, cash kickback payments, to a person, with intent to influence and reward an agent of an organization that received in a one year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Co-Op

City, in connection with a business, transaction, and series of transactions involving a thing of value of $5,000 and more, to wit, the Co-Op City painting work and cash kickback payments, in violation of Title 18, United States Code, Section 666(a)(2).

## OVERT ACTS

24. In furtherance of the charged conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. Between in or about September 2000 until in or about April 2002, NICKHOULAS VITALE, a/k/a "Nicky," the defendant, regularly delivered kickback payments from CC-2 to CC-1 and CC-3.

    b. On or about April 17, 2002, CC-2 provided to VITALE for delivery a kickback payment in connection with the Co-Op City painting work.

(Title 18, United States Code, Section 371.)

## COUNT FOUR
(Theft or Bribery Concerning Programs Receiving Federal Funds)

The Grand Jury further charges:

25. Paragraphs One through Fifteen and Eighteen of this Indictment are realleged, repeated, and incorporated by

reference as if fully set forth herein.

26. From at least in or about August 2000, up to and including at least in or about July 2002, in the Southern District of New York and elsewhere, NICKHOULAS VITALE, a/k/a "Nicky," the defendant, unlawfully, willfully and knowingly would and did corruptly give, offer, and agree to give a thing of value, to wit, cash kickback payments, to a person, with intent to influence and reward an agent of an organization that received in a one year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Co-Op City, in connection with a business, transaction, and series of transactions involving a thing of value of $5,000 and more, to wit, the Co-Op City painting work and cash kickback payments.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

11

## FORFEITURE ALLEGATIONS

27. As the result of committing one or more of the offenses alleged in Counts One, Two, Three, and Four of this Indictment, in violation of 18 U.S.C. §§ 371 and 666, defendants IRIS HERSKOWITZ BAEZ and NICKHOULAS VITALE, a/k/a "Nicky," shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

### Substitute Assets Provision

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

>    (i)  cannot be located upon the exercise of due diligence;
>
>    (ii)  has been transferred or sold to, or deposited with, a third party;
>
>    (iii)  has been placed beyond the jurisdiction of the court;
>
>    (iv)  has been substantially diminished in value; or
>
>    (v)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendant up to the value of the forfeitable property described above.

    (Title 18, United States Code, Sections 666, 981, 982;
       Title 21, United States Code, Section 853(p);
       Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v.-

IRIS HERSKOWITZ BAEZ,
NICKHOULAS VITALE,
a/k/a "Nicky,"

Defendants.

---

### INDICTMENT

07 Cr. ___

(Title 18, U.S.C., Sections 371,
666(a)(1)(B), 666(a)(2), and 2.)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

*/s/ Mark Chai*
Foreperson.

---

Post-It 11/1/87

4/11/07 - Fld. Indictment. A/W issued. Case assigned to Judge Karas for all purposes.
Eaton, Jr. U.S.M.J.
N.L.