UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                        :

UNITED STATES OF AMERICA          :

          -v.-                            :          07 Cr. 280 (KMK)

IRIS HERSKOWITZ BAEZ, and        :
NICKHOULAS VITALE,
  a/k/a "Nicky,"                      :

                 Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT NICKHOULAS VITALE'S PRE-TRIAL MOTIONS**

The Government respectfully submits this memorandum of law in response to the pretrial motion of defendant Nickhoulas Vitale ("Vitale" or the "Defendant"). Vitale moves for: (1) a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure; (2) the disclosure of grand jury transcripts; (3) the disclosure any "Governmental threats to witnesses"; (4) the disclosure of Rule 404(b) evidence three weeks prior to trial; (5) the disclosure of Brady/Giglio evidence; and (6) a dismissal of the Indictment based upon his claims that the charged conspiracy took place outside of the five-year statute of limitations.

Vitale's motions for a bill of particulars and disclosure of grand jury transcripts are meritless and should be denied. There are no "Governmental threats to witnesses" to disclose. The Government will fulfill its obligations with respect to Brady/Giglio materials, and will produce Rule 404(b) evidence in advance of trial and in accordance with any schedule set forth by the Court. Finally, the Defendant's motion to dismiss on statute of limitations grounds should be denied because it depends upon factual issues that are properly to be decided by a jury.

1

## BACKGROUND

On April 11, 2007, a grand jury sitting in this District returned a four-count Indictment charging Nickhoulas Vitale and Iris Herskowitz Baez in connection with a scheme to award a multi-million dollar painting contract at Co-Op City in return for kickbacks. The Indictment alleges that between 2000 and 2003, Baez served as the president, and later secretary, of the Board of Directors of Co-Op City, which is a large housing cooperative in the Bronx, New York. From at least 1999 to in or about July 2000, Vitale was employed as a painter by Co-Op City. Beginning in or October 2000, Vitale was employed as a painter by Stadium Painting.

The Indictment alleges that in the spring of 2000, the management company for Co-Op City decided to retain an outside contractor to perform all painting work for Co-Op City. In June 2000, Co-Op City issued an invitation to private painting contractors to bid for all the painting work at Co-Op City. The Indictment further alleges that Baez and Vitale agreed with others that Stadium Painting was to submit a bid for Co-Op City, and that Baez and Vitale would help steer the painting contract to Stadium Painting in return for kickbacks from CC-2, the "president and owner of Stadium Painting." Based on this corrupt arrangement, Stadium Painting received the contract in September 2000. Among other overt acts, the Indictment alleges that, "On or about April 17, 2002, CC-2 provided to Vitale for delivery a kickback payment in connection with the Co-Op City painting work." In addition, the Indictment alleges that several conspirators took steps to conceal their crimes after Stadium Painting had concluded its work at Co-Op City. Specifically, the Indictment alleges that "[b]etween in or about 2002, and in or about 2004, BAEZ stored cash in CC-3's home in order to help BAEZ avoid detection by law enforcement authorities."

Counts One and Two of the Indictment charge both Vitale and Baez with conspiracy and the substantive offense of soliciting and accepting a thing of value while intending to be influenced and rewarded in connection with their work at Co-Op City, in violation of Title 18, United States Code, Section 666(a)(1)(B). In addition, Counts Three and Four charge Vitale with conspiracy and the substantive offense of offering a thing of value to employees of Co-Op City with the intent to influence or reward them in connection with their work at Co-Op City, in violation of Title 18, United States Code, Section 666(a)(2).

On May 7, 2007, the Government produced to the defense extensive discovery.

## THE DEFENDANT'S PRETRIAL MOTION IS MERITLESS

Defendant Nickhoulas Vitale moves for: (1) a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure; (2) the disclosure of grand jury transcripts; (3) the disclosure any "Governmental threats to witnesses"; (4) the disclosure of Rule 404(b) evidence three weeks prior to trial; (5) the disclosure of Brady/Giglio evidence; and (6) a dismissal of the Indictment based upon his claims that the charged conspiracy took place outside of the five-year statute of limitations. For the reasons set forth below, the Defendant's motions should be denied.

## I.    Bill of Particulars

Vitale seeks an order for a bill of particulars specifically on the circumstances relating to one of the overt acts stated in the Indictment: "On or about April 17, 2002, CC-2 provided to Vitale for delivery a kickback payment in connection with the Co-Op City painting work." "CC-2" is described in the Indictment as the "president and owner of Stadium Painting." Given the specificity of the description of the overt act, as well as the other information provided in the thirteen-page speaking Indictment and by the Government's discovery, the Defendant is not

3

entitled to a bill of particulars on this issue.

The sole legitimate purpose of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to: (i) enable him to prepare his defense; (ii) avoid unfair surprise at trial; and (iii) preclude a second prosecution for the same offense.  See Wong Tai v. United States, 273 U.S. 77, 80-82 (1927); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1991); United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973).  Indeed, "a bill of particulars should be required only where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." Torres, 901 F.2d at 234.  Furthermore, "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means."  See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (affirming denial of request for a bill of particulars where the Government adequately informed the defendant of the nature of the charges against him through discovery).  A denial of a request for a bill of particulars is reviewed for abuse of discretion.  United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir. 1998).

The Second Circuit has "consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms."  United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973) (citing United States v. Fortunato, 402 F,2d 79, 82 (2d Cir. 1968)).

The ultimate test for whether a bill of particulars should be granted is not whether the information sought is merely helpful in preparing for trial, but whether it is necessary for the limited notification purpose of a bill of particulars.  See United States v. Leighton, 265 F. Supp. 27, 35 (S.D.N.Y.), aff'd, 386 F.2d 822 (2d Cir. 1967); United States v. Ramirez, 602 F. Supp.

783, 793 (S.D.N.Y. 1985).

The law is equally clear about what a bill of particulars is not.  "Acquisition of evidentiary detail is not the function of the bill of particulars."  Torres, 901 F.2d at 234; see also United States v. Cephas, 937 F.2d 816, 834 (2d Cir. 1991) (Government is not required to "particularize all of its evidence,");  United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974); United States v. Lebron, 222 F.2d 531, 535-36 (2d Cir. 1955).  Nor, is it a general investigative tool for the defense.  See Salazar, 485 F.2d at 1278.  Further, a bill of particulars is not to be used as a vehicle to "compel disclosure of how much the Government can prove and how much it cannot, or to foreclose the Government from using proof it may develop as the trial approaches." United States v. Malinsky, 19 F.R.D. 426, 428 (S.D.N.Y. 1956).  Nor is it a vehicle for forcing the Government to disclose its legal theory.  See United States v. Muyet, 945 F. Supp. 586, 588-589 (S.D.N.Y. Nov. 18, 1996), United States v. Shoher, 555 F. Supp. 346, 349-51 (S.D.N.Y. 1983); United States v. Coped, 378 F. Supp. 99, 103 (S.D.N.Y. 1974).  "The Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed.  Therefore, 'the Government is not required to provide information that would, in effect, give the defendant a preview of the Government's case before trial.'"  United States v. Triana-Mateus, 98 Cr. 958 (SWK), 2002 WL 562649 at *5 (S.D.N.Y. Apr. 15, 2002) (quoting United States v. Conley, 00 Cr. 816 (DAB), 2002 WL 252766 at *4 (S.D.N.Y. Feb. 21, 2002)); see also Torres, 901 F.3d at 233-34 (demands for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pre-trial discovery); United States v. Trippe, 171 F.Supp.2d 230, 240 (S.D.N.Y. 2001) (SWK) ("demands for particular information with respect to where, when, and with whom the Government will

charge the defendant with conspiring are routinely denied").

In this case, there is no danger that the defendants will suffer from unfair surprise at trial. Vitale has received an abundance of information about the scheme with which he is charged, and indeed, has received specific information about the overt act of which he complains. Most significantly, the Indictment itself is pled with specificity. The Indictment is thirteen pages long and contains extensive details about both who and what was involved in the scheme. For example, the Indictment specifically describes Vitale's role as someone who helped plan the scheme and who executed the scheme, by among other things, receiving the kickbacks paid by Stadium Painting and giving them, in turn, to his co-conspirators. Moreover, the Indictment charges conduct relating to a limited scheme, namely the payment of kickbacks by Stadium Painting to agents and officials of Co-Op City. Thus, there can be little confusion about what the Government has charged.

The core of Vitale's argument is the idea that an overt act that falls close to the date at which the statute of limitations would run must be described with heightened specificity in the Indictment. "[T]he Government should be held to an *exact* standard because of the extremely close proximity to the five (5) years (sic) statute of limitations period." (Br. 5) (emphasis added). Yet Vitale cites no legal authority for this proposition, which is plainly at odds with the law of this Circuit. The Indictment clearly satisfies the true standard for particularity by "track[ing] the language of the statute charged and state[ing] the time and place (in approximate terms) of the alleged crime." United States v. LaSpina, 299 F.3d 165 (2d Cir. 2002) (citing United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).

The additional information Vitale is demanding – disclosure of specifics that would

6

reveal the Government's theory of the case, the manner in which it will attempt to prove the charges, and the means by which the crime charged was committed – is precisely the information to which courts have repeated held that he is not entitled.

## II.     Disclosure of Grand Jury Transcripts

Vitale moves for the disclosure of grand jury transcripts based on unsupported allegations that testimony given before the grand jury regarding an overt act committed by Vitale on or about April 17, 2002, was "false, misleading, and incorrect." (Vitale Br. at 8.) Vitale's baseless accusations do not justify the rare step of disclosure under Federal Rule of Criminal Procedure 6(e).

To prevail under Rule 6(e), Vitale must demonstrate that "'a particularized need' exists for the [grand jury] minutes which outweighs the policy of secrecy." Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959); United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978) (a defendant seeking disclosure of grand jury minutes "because of a matter that occurred before the grand jury" must "show a particularized need that outweighs the government's strong interest in secrecy"). This burden applies whether the defendant requests disclosure of grand jury minutes to himself or to the court *in camera.* See Torres, 901 F.2d at 233 ("[g]rand jury proceedings carry a presumption of regularity" and *in camera* "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct") (internal quotations omitted). "Mere speculation" by defendants "as to what occurred in front of the Grand Jury does not warrant inspection of the minutes by defense counsel." United States v. Henry, 861 F. Supp. 1190, 1194 (S.D.N.Y. 1994) (citations omitted). Even judicial inspection of grand jury materials is inappropriate without particularized proof of irregularity. United States

v. Spy Factory, Inc., 960 F. Supp. 684, 690 (S.D.N.Y. 1997).

       In the present case, Vitale simply disputes the facts alleged in the Indictment and can point to no particularized or even general misconduct by the Government before the grand jury. Vitale argues that he is entitled to disclosure of grand jury materials because the Government obtained the Indictment by using the testimony of CC-2, or the testimony of a law enforcement agent regarding hearsay statements relayed to him or her by CC-2, and that such testimony was "false, misleading, and incorrect." Since neither the use of direct or hearsay testimony can be considered even remotely improper or irregular, Vitale appears to be simply disputing the facts alleged in the Indictment. He frankly acknowledges the fact-based nature of his motion by arguing that it "is not a 'fishing expedition' but based on the insufficiency of the evidence presented to the Grand Jury." (Vitale Br. at 9.) However, Vitale's disagreement with the factual allegations does not entitle him to the disclosure of grand jury minutes; it provides him a defense at trial.

### III.    Motion to Dismiss

       Vitale's motion to dismiss should be dismissed under Federal Rule of Criminal Procedure 12(b)(2) because it does not attack the Indictment as facially insufficient, but instead raises a defense that cannot be decided without a trial of the general issue. In the alternative, the motion should be deferred for "good cause" pursuant to Federal Rule of Criminal Procedure 12(d). Finally, even if the Court decides to address the merits of the statute of limitations defense prior to trial, Vitale's claim should be denied as meritless.

**A.     The Motion Should Be Denied**

        1.     <u>Applicable Law</u>

Rule 12 of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine <u>without a trial of the general issue</u>." Fed. R. Crim. P. 12(b)(2) (emphasis added). It is hornbook law that "[a] Rule 12(b) motion to dismiss is not the proper way to raise a factual defense." 24 Moore's Federal Practice § 612.02, at 612-8 (3d ed. 1997). Indeed, when ruling on a pre-trial motion to dismiss, the Court must presume the truth of the allegations in the indictment, <u>see</u> <u>United States</u> v. <u>Alfonso</u>, 143 F.3d 772, 777 (2d Cir. 1998), and cannot resolve questions that require trying the facts of the case, which would invade the province of the jury, <u>see</u> <u>United States</u> v. <u>Knox</u>, 396 U.S. 77, 83-84 & n.7 (1969); <u>United States</u> v. <u>Torkington</u>, 812 F.2d 1347, 1353 (11th Cir. 1987) ("a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial"). A defense is "capable of determination" under Rule 12(b)(2) if a "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." <u>United States</u> v. <u>Covington</u>, 395 U.S. 57, 1561 (1969).

Thus, a pre-trial motion to dismiss based on statute of limitations grounds should be dismissed if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues. <u>Costello</u> v. <u>United States</u>, 350 U.S. 359, 408-09 (1956) ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits"). It is well-established that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to

plead an acquittal or conviction in bar of future prosecutions for the same offense." Alfonso, 143 F.3d at 776 (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). As the Second Circuit has explained, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." LaSpina, 299 F.3d at 177 (citing Stavroulakis, 952 F.2d at 693).

Once returned by a grand jury, an indictment satisfies the requirements of the statute of limitations if the alleged conspiracy is shown to have continued into the limitations period. See United States v. Persico, 621 F. Supp. 842, 872 (S.D.N.Y. 1985) (Keenan, J.); see also United States v. Coia, 719 F.2d 1120, 1125 (11th Cir. 1983). The statute of limitations does not begin to run until after the crime has been completed. Toussie v. United States, 397 U.S. 112, 115 (1970). Determining when a conspiracy concludes, or when a defendant may have withdrawn from a conspiracy, commonly involves issues of fact that cannot fairly be resolved by a pre-trial motion to dismiss. See United States v. Sanchez, No. S1 01 Cr. 277 (RCC), 2003 WL 1900851, at *2-*3 (S.D.N.Y. April 17, 2003) (pre-trial motion to dismiss conspiracy count as time-barred denied, because "whether [co-conspirator's] return of the money was an act in furtherance of the conspiracy" and "whether [defendant] was incarcerated during the conspiracy and whether or not he participated in the conspiracy are issues of fact to be determined by the jury").

    2.    Discussion

Vitale's motion to dismiss should be denied because it does not attack the sufficiency of the Indictment, but instead raises factual issues that will be resolved at trial. There is no doubt, and little argument, as to the facial sufficiency of the Indictment. With regard to the act in question, the Indictment states that "on or about April 17, 2002, CC-2 provided to Vitale for

delivery a kickback payment in connection with the Co-Op City painting work." Accordingly, the Indictment meets and exceeds the requirement that it "track the language of the statute charged," LaSpina, 299 F.3d at 177, by clearly identifying the specific act – the delivery of kickback payments from Stadium Painting to Co-Op City officials – which forms the basis for Vitale's involvement in the scheme.

Vitale's principal arguments for dismissal of the Indictment rely on factual issues that must be determined at trial. Vitale's objection that the "on or about April 17, 2002" language "is an insufficient factual allegation that cannot survive a Fed. R. Crim. P. 12(b) motion to dismiss based on the statute of limitations" is unsupported and incorrect. The date of this action, which must be presumed true as alleged, falls within the limitations period. Vitale provides no authority – or even reasoning, beyond unsupported accusations that the Government has "created" a "storyline" to "satisfy the statute of limitations" – to support his position that the allegation is somehow insufficient. (Vitale Br. at 12). Any further inquiry into the sufficiency of the Government's evidence should be left to the jury.

Vitale's argument for dismissal based on his alleged withdrawal from the conspiracy prior to the statute of limitations period is also a factual issue for the jury. Vitale argues that he withdrew when his employment with Stadium Painting ended or, alternatively, when Co-Op City discontinued its relationship with Stadium Painting. (Vitale Br. at 11.) These theories are equally unavailing. First, the Defendant's theories do not counter the allegations of the Indictment, namely that Vitale, among other things, transported kickbacks between Stadium Painting and Co-Op City, a role that he could have performed equally well after his employment with Stadium ended or after Stadium's contract ended. Second, a defendant's alleged

withdrawal from a conspiracy outside the limitations period is an affirmative defense that the defendant has the burden of proving by a preponderance of the evidence. See United States v. Milstein, 401 F.3d 53, 72 (2d Cir. 2005), citing United States v. James, 609 F.2d 36, 41 (2d Cir. 1979). The defense has not presented any evidence, much less a preponderance of it, that Vitale withdrew prior to the conspiracy's conclusion. Accordingly, the factual sufficiency of the Indictment cannot plausibly be called into question at the pre-trial stage. Vitale is entitled to present withdrawal or statute of limitations defenses at trial. Thus, the motion to dismiss should be denied.

### B. In the Alternative, the Motion Should Be Deferred Pursuant to Rule 12(d)

Even if the Court determines that the motion to dismiss may be resolved in accordance with the requirements of Rule 12(b)(2), the motion should be deferred pursuant to Federal Rule of Criminal Procedure 12(d). Rule 12(d) provides that a district court "must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). "Good cause" exists when a defendant's claims "are substantially founded upon and intertwined with the evidence to be presented at trial." United States v. Bodmer, No. 03 CR 947 (SAS), 342 F. Supp. 2d 176, 180 (S.D.N.Y. 2004) (quoting United States v. Williams, 644 F.2d 950, 953 (2d Cir. 1981)).

Here, Vitale's challenge to the Indictment requires the Court to resolve both whether and,

if so, when he withdrew from the alleged conspiracy. The motion also would require the Court to determine as a factual matter when the final conspiratorial act occurred. Hence, the statute of limitations defense is "substantially founded upon and intertwined with the evidence to be presented at trial," Bodmer 342 F. Supp. at 180. Because this motion raises factual issues regarding Vitale's alleged withdrawal from the conspiracy, the timing of Vitale's final actions, and the actions of his co-conspirators, there exists good cause to the defer the motion until trial.

> C. **The Motion Is Meritless because Evidence Shows the Conspiracy Persisted Within the Statute of Limitations Period.**

In any event, the Government expects that its evidence at trial will demonstrate both that the conspiracy continued well beyond April 11, 2002, and that Vitale committed specific overt acts in furtherance of the conspiracy after that date.

The Government expects the evidence at trial to prove that while Stadium Painting formally terminated its painting contract with Co-Op City in January 2002, Co-Op City continued to pay Stadium Painting substantial sums of money through June 2002 for work Stadium Painting previously had performed. The Government also expects the evidence to show that CC-2, the president and owner of Stadium Painting, continued to pay kickbacks to Vitale and his co-conspirators between January through April 2002. These payments included a kickback that CC-2 provided to Vitale on or about April 17, 2002, after CC-2 had received a large check from Co-Op City for work Stadium Painting previously had performed.

As a caveat, the Government expects that some of the evidence at trial arguably could support the defendant's claim that the kickback payments stopped sooner than April 2002. In particular, the Government expects that another Government witness, who was an employee of Co-Op City and who is described in the Indictment as CC-3, may testify that the last kickback

payment he received from CC-1, via Vitale, occurred in December 2001. Nevertheless, such testimony from CC-3 does not prove that Vitale's last overt act in the conspiracy took place outside the limitations period. Reconciling this conflicting testimony is a typical question of fact reserved for decision by the jury.

Furthermore, Vitale is incorrect that in determining when the statute of limitations began to run, the analysis focuses solely on Vitale's last personal overt act in furtherance of the conspiracy. To the contrary, "[f]oreseeable acts of one co-conspirator in furtherance of the conspiracy are attributable to all co-conspirators." Milstein, 401 F.3d at 72. To satisfy the statute of limitations, the Government merely must "establish[] that the conspiracy operated within the five-year period preceding the indictment, and a conspirator knowingly committed at least one overt act in furtherance of the scheme within that period." United States v. Salmonese, 352 F.3d 608, 614 (2d Cir. 2003) (emphasis added).

The Second Circuit has held that conspiracies for economic gain persist until their financial goals are realized, and that actions taken to protect the proceeds of the scheme represent overt acts in furtherance of the conspiracy. The Court of Appeals has explained:

> [a]lthough it is established that "mere overt acts of concealment" of the commission of the crime would not extend the life of a conspiracy after its "central criminal purposes" had been attained, Grunewald v. United States, 353 U.S. 391, 401-2, 77 S. Ct. 963, 1 L. Ed. 2d 931 (1957), we have consistently ruled that "where a conspiracy's purpose is economic enrichment, the jointly undertaken scheme continues through the conspirators' receipt of their anticipated economic benefits." Thus, efforts to secrete or launder moneys gained from a scheme for monetary gain, and to safeguard them from discovery or recovery, are to be considered acts in furtherance of the conspiracy, rather than mere acts of concealment of the commission of the crime.

Milstein, 401 F.3d at 72 (quoting Salmonese, 352 F.3d at 615) (emphasis added); cf. United

States v. A-A-A Elec. Co., Inc., 788 F.2d 232, 244-45 (4th Cir. 1986) (holding that for limitations purposes, a Sherman Act criminal conspiracy continues through time of illegal payoffs and receipt of payments, and is not complete when the bids are submitted).

In the present case, the statute of limitations did not begin to run until all of Vitale's co-conspirators had reaped the financial benefits that were the purpose of the conspiracy. The Indictment alleges that the kickback scheme existed so that CC-2 could benefit by profiting from the painting contract, and that the conspirators at Co-Op City could benefit from the kickbacks that CC-2 paid. CC-2 did not finish reaping the financial benefits of the corrupt scheme until he cashed the final check for painting work that he performed at Co-Op City pursuant to the ill-gotten contract. The Government expects the evidence at trial to show that after April 11, 2002, CC-2 cashed two checks from Co-Op City that were payment for work performed as part of the painting contract. CC-2 cashed one of the checks on April 17, 2002, and the other on October 24, 2002. Not only were CC-2's acts of cashing the checks made in furtherance of the purpose of the scheme, they were entirely foreseeable to Vitale and the other conspirators. Accordingly, the statute of limitations did not begin to run until, at the earliest, October 24, 2002.[1] The fact that CC-2's deposits of these checks were not specified as overt acts in the Indictment is of little significance for purposes of the statute of limitations analysis. "It is a well-established rule of this and other circuits that the overt act element of a conspiracy charge may be satisfied by an

---

[1] In addition, the Indictment alleges, and the Government expects the evidence at trial will show, that certain conspirators continued to act in an effort to conceal the illegal proceeds well into 2003. Specifically, the Government expects the evidence at trial to demonstrate that in late 2003, Iris Baez became concerned that law enforcement officials, aware of allegations of wrongdoing on her part, were preparing to execute a search warrant of her home where she had stored the cash proceeds of this crime. In order to conceal the financial fruits of the scheme, Baez asked CC-3 to store the cash at his home instead.

overt act that is not specified in the indictment, at least so long [as] there is no prejudice to the defendant." Milstein, 401 F.3d at 70 (citing United States v. Frank, 156 F.3d 332, 337 (2d Cir. 1998)); see also Salmonese, 353 F.3d at 622-23 (holding that superseding indictments, which add new overt acts, relate back to the prior indictment for statute of limitations purposes so long as the overt act does not materially broaden or substantially amend the original pleading).

## IV.    Brady/Giglio/Rule 404(b)

The Government recognizes its continuing disclosure obligations under Brady and will comply fully with those obligations. The Government also will provide Giglio or Section 3500 material in accordance with its standard practice, which is to provide such materials in advance of trial. To the extent that there are any threats to witnesses by the Government, and the Government is not currently aware of any, the Government would produce such information as part of its Giglio or Section 3500 material.

The Government will provide notice of Rule 404(b) evidence pursuant to a schedule set forth by the Court.

## CONCLUSION

For the foregoing reasons, Vitale's motions should be denied.

Dated:    New York, New York
          July 23, 2007

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney


                          By:       /s/ Alexander J. Willscher
                                    ChristineY. Wong
                                    Alexander J. Willscher
                                    Assistant United States Attorneys
                                    Telephone: (212) 637-2460/2736

**CERTIFICATE OF SERVICE**

       Alexander J. Willscher deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

       That on July 23, 2007, he served a copy of the Government's Memorandum of Law in Opposition to Defendant Nickhoulas Vitale's Motion by Federal Express on:

> Vincent J. Romano, Esq.
> 9201 4th Avenue, Suite 704
> Brooklyn, NY 11209
> (*Counsel for Nickhoulas Vitale*)
>
> Howard R. Birnbach, Esq.
> 111 Great Neck Rd, Suite 413
> Great Neck, NY 11021-5402
> (*Counsel for Iris Herskowitz Baez*)

       I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. Section 1746.

                                       /s/ Alexander J. Willscher
                                       Alexander J. Willscher

Executed on: July 23, 2007
                    New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA                          :
:
-v.-                          :           07 Cr. 280 (KMK)
:
IRIS HERSKOWITZ BAEZ, and                         :
NICKHOULAS VITALE,                                :
  a/k/a "Nicky,"                                 :
:
Defendants.              :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NICKHOULAS VITALE'S PRE-TRIAL MOTIONS

                                      MICHAEL J. GARCIA
                                      United States Attorney for the
                                      Southern District of New York
                                      Attorney for the United States
                                          of America

CHRISTINE Y. WONG
ALEXANDER J. WILLSCHER
Assistant United States Attorneys

    - Of Counsel -